UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| JOE H. BANDY, III,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF CORRECTION, MCDONALD WILL, JEFF PETERSON, CRAIG OSELAND, GALLO RICK, BETH VERDIN, THANE MURPHY, and CORRY VARGASON, *in their individual and official capacities*,<br><br>Defendants. | Civil No. 13-2209 (JRT/LIB)<br><br>MEMORANDUM OPINION AND ORDER REJECTING THE REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE AND GRANTING APPLICATION TO PROCEED IN FORMA PAUPERIS |

Joe H. Bandy, III, 1111 Highway 73, Moose Lake, MN 55767, *pro se*.

Plaintiff Joe Bandy brings this action under 42 U.S.C. § 1983 against several state officials he claims were involved in a decision to revoke his supervised release after he served a state criminal sentence. He applied for permission to proceed in forma pauperis ("IFP") and United States Magistrate Judge Leo I. Brisbois recommended denying Bandy's application and dismissing his claims for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). In the Report and Recommendation ("R&R"), the Magistrate Judge determined that Bandy's claims under § 1983 are barred by the favorable termination rule espoused in *Heck v. Humphrey*, 512 U.S. 477 (1994), because success on Bandy's claims would necessarily imply that he was wrongly imprisoned following the revocation of his supervised release. Bandy objects to

the R&R and the Court will sustain his objections, because it finds that Bandy adequately alleges that his revocation was favorably terminated and that some of his claims would not necessarily imply that his revocation was invalid. Therefore, the Court will reject the R&R and grant Bandy's IFP application.

## BACKGROUND

Bandy was convicted in state court of third-degree criminal sexual conduct and deprivation of parental rights and was sentenced to a term of imprisonment. *See In re Commitment of Bandy*, No. A11-901, 2011 WL 5026399, at *1 (Minn. Ct. App. Oct. 24, 2011). Following his imprisonment he was civilly committed to the Minnesota Sex Offender Program ("MSOP") in Moose Lake, Minnesota. *See id.* at *3. The facts leading up to the incidents underlying Bandy's complaint are not entirely clear, but it appears that, while Bandy was committed at Moose Lake and still on supervised release from his prison term, he was involved in an altercation with another resident at Moose Lake.[1] Due to this altercation, Bandy's supervised release was revoked and he was sent back to prison for 210 days. He has since apparently returned to Moose Lake.

Bandy's § 1983 claims involve the circumstances surrounding his revocation. He claims that various Moose Lake and state probation and hearing officers violated his civil rights by misrepresenting the facts of his altercation at his revocation hearing, entering incorrect information into the record of his revocation hearing, denying him access to

---

[1] More details about the altercation and the factual background of this case can be found in the record in a habeas corpus action filed by Bandy. (*See* Civ. No. 13-204, Compl., Jan. 23, 2013, Docket No. 1.)

appeal the revocation decision, and providing ineffective assistance in the revocation process. (*See* Compl. ¶¶ 2, 8-10, Aug. 5, 2013, Docket No. 1.) Specifically, he seeks declaratory judgment and monetary relief for claims of malicious prosecution (Count I), (*id.* ¶¶ 46-47), discrimination (Count II), (*id.* ¶¶ 48-53), false arrest and imprisonment (Count III), (*id.* ¶¶ 54-56), obstruction of justice and access to the courts (Count IV), (*id.* ¶¶ 57-61), and misrepresentation (Count V), (*id.* ¶¶ 62-66), which he frames as violations of the First, Eighth, and Fourteenth Amendments. Although Bandy does not bring each of these claims against all defendants, in substance his allegations against each defendant are the same.

He alleges that defendants Vargason, Murphy, and Verdin, all officials at Moose Lake, misrepresented the facts surrounding the altercation, including at his revocation hearing. For example, he alleges that Vargason stated that the other resident was "defending himself," which led to the "incorrect misrepresentation" of the other resident's actions. (*Id.* ¶ 4; *see also id.* ¶¶ 5-6, 28-30, 39-41, 49-50.) Bandy alleges that defendant Peterson, the Executive Officer of Hearings and Release with the Minnesota Department of Corrections, obstructed his access to the courts by misconstruing the deadline for administrative appeal from the hearing determination and by threatening Bandy that if he continued any further correspondence on the matter he would be disciplined. (*Id.* at ¶¶ 43-44.) He alleges that defendant Oseland, a hearing officer for the Hearing and Release Unit, entered a false and incorrect account of the information presented at the hearing into the disposition and record of the hearing. (*Id.* ¶ 38.) Finally, he alleges that defendant Rick provided ineffective assistance in the revocation

process and that defendants Jesson, McDonald, and the Commissioner of Corrections failed to adequately supervise the revocation hearing process, thus enabling these alleged rights violations to occur. (*Id.* ¶¶ 31, 33, 35-36.)

As remedy for these alleged injuries, Bandy seeks a declaration that his rights were violated, compensatory and punitive damages, and to be "protected from all other State Correctional Facilit[ies] by way of monitoring from the designated intervening officer of the court." (*Id.* at 12-13.)

The Magistrate Judge recommended dismissing all of Bandy's claims for failure to state a claim upon which relief can be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and Bandy objects.

## DISCUSSION

### I. STANDARD OF REVIEW

Upon the filing of a report and recommendation by a magistrate judge, a party may "serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).

### II. DISMISSAL FOR FAILURE TO STATE A CLAIM

#### A. Favorable Termination Rule under *Heck*

The Magistrate Judge found that Bandy's complaint fails to state a claim upon which relief can be granted because he determined that Bandy's § 1983 action is barred

by the favorable termination rule espoused in *Heck v. Humphrey*, 512 U.S. 477 (1994). Under this rule, a claim for damages related to a conviction or sentence that has not been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus" is not cognizable under § 1983.  *Id*. at 486–87.  This is because allowing a §1983 suit for allegedly unconstitutional conduct that, in essence, challenges the lawfulness of a conviction or sentence, would permit prisoners to improperly attack and undermine the finality of criminal judgments.  *Id.* at 484-86 (noting that "[t]his Court has long expressed . . . concerns for finality and consistency and has generally declined to expand opportunities for collateral attack" and that "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments").  Thus, in order to determine whether a prisoner's suit may proceed under § 1983, the Supreme Court directs that

> the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

*Id.* at 487.[2]  Only if the plaintiff's lawsuit would **not** demonstrate the invalidity of a conviction or sentence of the plaintiff should the action be allowed to proceed.  *Id*.

Thus, under *Heck*, actions challenging the validity of a prisoner's confinement are not cognizable as § 1983 actions and instead must be brought in a habeas proceeding.

---

[2] Prior to *Heck*, the Supreme Court had ruled that a prisoner's § 1983 action seeking injunctive relief to restore good-time credits was similarly barred, as habeas corpus was the appropriate avenue for relief.  *Preiser v. Rodriguez*, 411 U.S. 475 (1973).

But even when habeas is no longer available because a prisoner is no longer incarcerated, the Eighth Circuit has held that *Heck* still bars a former prisoner's § 1983 action that would undermine the sentence or conviction where the plaintiff fails to demonstrate the invalidity of the sentence or conviction. *See Entzi v. Redmann*, 485 F.3d 998, 1003 (8th Cir. 2007). The Eighth Circuit has analogized a revocation of supervised release to a conviction or sentence for the purposes of *Heck*, applying *Heck* under circumstances nearly identical to those here: a § 1983 suit on the basis of revocation of supervised release. *Marlowe v. Fabian*, 676 F.3d 743, 747 (8th Cir.) *cert. denied*, 133 S. Ct. 647 (2012) (affirming dismissal of suit against commissioner and executive officer of probation hearing unit in individual and official capacities for unlawful imprisonment seeking damages and declaratory judgment). Therefore, to maintain a claim for damages or injunctive relief, Bandy must show that the revocation of his supervised release has been declared invalid or that his claims do not necessarily imply the invalidity of the revocation.

The Magistrate Judge determined that *Heck* barred all of Bandy's claims here because there has been no favorable termination of Bandy's revocation and a "judgment upholding [Bandy]'s current civil rights claims would necessarily imply that he was wrongly imprisoned following the revocation of his supervised release." (R&R at 4, Sept. 23, 2013, Docket No. 3 (emphasis omitted).) Bandy objects to this determination, arguing that his disposition was declared invalid and focusing his objections on his allegations that defendant Peterson denied him access to the administrative appeal process. (*See* Obj. to R&R at 2, Oct. 3, 2013, Docket No. 4.)

B.      **Applying *Heck* to Bandy's Claims**

The Court concludes that Bandy's claims are not properly dismissed at this time. Taking Bandy's allegations as true and liberally construing his pleadings, *Martin-Trigona v. Stewart*, 691 F.2d 856, 858 (8th Cir. 1982), the Court concludes that his claims are not barred by *Heck* because Bandy has plausibly alleged that his revocation was favorably terminated and because at least some of his claims do not implicate the validity of his revocation.

First, it is not entirely clear based on Bandy's allegations that there has not been a favorable termination in this case. In his objections to the R&R, Bandy argues that *Heck* does not bar his claims because he alleges that his revocation had been invalidated. He states that his "disposition was declared invalid by the correction of the false information in the disposition that was used to revoke me."[3] (Obj. to R&R at 2; *see also* Compl. ¶ 10 ("[O]nce plaintiff filed a correction of data and information request, [defendant Peterson] did correct the false information that played a major part in his being put in prison").) Although it not clear from the allegations what information was corrected, it would be premature at this stage to conclude that this does not amount to a favorable termination under *Heck* such that Bandy's claims are not barred. *See Pomerenke v. Bird*, 491 F. App'x 778, 780 (8th Cir. 2012) (reversing district court's dismissal of claims

---

[3] The Court accepts this statement as an explanation of the pleadings in the Complaint (*see* Compl. ¶ 10) and fairly considers the statement in determining whether Bandy states a claim upon which relief may be granted. *See Bracken v. Dormire*, 247 F.3d 699, 702-03 (8th Cir. 2001) ("[I]t is our longstanding practice to construe pro se pleadings liberally."); *Johnson v. Clinton*, 763 F.2d 326, 328 (8th Cir. 1985) ("Pro se pleadings are to be read with liberality, and their allegations given every reasonable indulgence.").

pursuant to 28 U.S.C. § 1915(e) for failure to state a claim, as "given the very early stage of the proceedings at which the district court rendered its decision, this court cannot find support in the record for the district court's determination . . . that [plaintiff]'s allegations . . . failed to state a claim as a matter of law"). It is at least legally plausible that the correction of information in Bandy's record amounts to a favorable termination for the purposes of *Heck*, so even though Bandy has not artfully made that argument, it would be premature to dismiss his case before he has the opportunity to present evidence indicating what, how, and when the information was corrected. Thus, this appears to be a case where "the petitioner inartfully raised factual issues that implicated legal propositions that he could not reasonably be held responsible for articulating." *Bracken v. Dormire*, 247 F.3d 699, 703 (8th Cir. 2001).

Furthermore, even if there was, in fact, no favorable termination of Bandy's revocation, at least some of his claims against some defendants fall outside *Heck*'s bar on § 1983 claims, because success on those claims would not "necessarily imply the invalidity" of the judgment. *Heck*, 512 U.S. at 487. *Heck* permits § 1983 claims to proceed that do not function as collateral attacks on the judgment itself, such as a claim for "using the wrong procedures," rather than "reaching the wrong result." *Id.* at 482-83. For example, the Eighth Circuit has found that a claim alleging that a police detective "knowingly gave false information while testifying in support of issuance of an arrest warrant" was not barred by *Heck* "because [plaintiff's] success on the claim would not necessarily imply the invalidity of his convictions or sentences." *Odom v. Kaizer*, 417 F. App'x 611 (8th Cir. 2011). Other examples of claims falling on this safe side of *Heck*'s

bar include a claim for the "correction of inaccurate and prejudicial information" in a parole file, *Cooper v. Mo. Parole Bd.*, 68 F.3d 478 (8th Cir. 1995), and a claim challenging the process by which a state board reached a clemency decision, *Otey v. Hopkins*, 5 F.3d 1125, 1131 (8th Cir. 1993). In *Wilkinson v. Dotson*, the Supreme Court held that challenges to state procedures for denying parole eligibility and suitability were cognizable under § 1983 because success on such claims would not necessarily mean release from prison, but rather a new opportunity for parole review. 544 U.S. 74, 82 (2005).[4]

Bandy's claims against defendants Peterson and Oseland fall squarely within this category of claims cognizable under § 1983 even without a favorable termination. He alleges that defendant Peterson denied him the opportunity to appeal his revocation through the administrative appeal process by claiming that the 30-day appeal deadline barred his appeal even though Bandy alleges that he "filed the appeal within three days of the time I received it." (Compl. ¶¶ 42, 56, 61.) He alleges that defendant Oseland violated his right to a fair and impartial hearing "by receiving and entering information that was not a part of the record." (Compl. ¶ 60.)

These allegations reasonably state a claim for denial of access to the courts and general procedural defects, which do not necessarily implicate the outcome of Bandy's revocation. *Cf. Odom*, 417 F. App'x at 611 (claim that police officer gave false

---

[4] There, the Court framed the standard for whether a § 1983 claim would be barred as whether it "necessarily spell[s] speedier release" or "lies at the core of the habeas corpus." *Wilkinson*, 544 U.S. at 82 (internal quotations omitted).

information for an arrest warrant cognizable via § 1983); *Otey*, 5 F.3d at 1131 (claim challenging adequacy of process used by state clemency board cognizable via § 1983). As with the claim in *Wilkinson*, success on these claims would likely result in a new hearing, or, as Bandy's remedial request can be reasonably construed, (*see* Compl. at 12 (seeking monitoring of the Hearing and Release Unit), prospective injunctive relief requiring the Hearing and Release Unit to alter or improve its procedures. *Cf. Wilkinson*, 544 U.S. at 82 (noting that claims against state parole procedures seeking "**future** relief (which, if successful, will not necessarily imply the invalidity of confinement or shorten its duration) are yet more distant from th[e] core [of habeas corpus]" (emphasis in original)). Thus, regardless of whether there has been a favorable termination of Bandy's revocation, at a minimum, these process-oriented claims against defendants Oseland and Peterson must be permitted to proceed.

In light of Bandy's allegations about the favorable termination of his revocation and the viability of at least some of his claims, the Court declines to dismiss Bandy's claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and instead grants Bandy's application to proceed with this litigation in forma pauperis.

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, the Court **SUSTAINS** Plaintiff's objections [Docket No. 4] and **REJECTS** the Report and Recommendation of the Magistrate Judge dated September 23, 2013 [Docket No. 3].

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's motion for leave to proceed in forma pauperis [Docket No. 2] is **GRANTED**.

DATED:  January 2, 2014                               ____s/ John R. Tunheim____
at Minneapolis, Minnesota.                                   JOHN R. TUNHEIM
                                                             United States District Judge