UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Joe H. Bandy, III,

                    Plaintiff,                          Court File No. 13-cv-2209 (JRT/LIB)

        v.                                                          **ORDER AND**
                                                         **REPORT AND RECOMMENDATION**

Commissioner of Correction, et al.,

                    Defendants.

---

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of 28 U.S.C. § 636(b)(1)(A), and upon Defendant Commissioner of Corrections[1] ("Defendant DoC Commissioner"), Defendant Craig Oseland, and Defendant Jeff Peterson's (collectively, "DoC Defendants") Motion for Judgment on the Pleadings and for Summary Judgment, [Docket No. 71].

For the reasons set forth below, the Court recommends that Defendants' Motion for Judgment on the Pleadings and for Summary Judgment, [Docket No. 71], be **GRANTED**.

## I.    BACKGROUND  AND STATEMENT OF ALLEGED FACTS[2]

---

[1] Plaintiff did not in his original or Amended Complaint identify the name of the individual holding the position of the Commissioner of the Department of Corrections at the time of the alleged events.  However, Defendant Tom Roy identified himself as the Commissioner of the Minnesota Department of Corrections. (Affidavit of Tom Roy, [Docket No. 75], 1).

[2] As discussed in more detail in the sections below, the Court recommends that the DoC Defendants' motion for judgment on the pleadings be granted as to all of Plaintiff's claims and does not reach the issue of whether the DoC defendants are entitled to Rule 56 summary judgment. Accordingly, the Court's statement of facts is limited to those contained in the materials the Court may consider in ruling on the motion for judgment on the pleadings without converting the motion to a Rule 56 motion for summary judgment. See Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) ("When considering a motion for judgment on the pleadings . . ., the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, ... as well as materials that are necessarily embraced by the pleadings.") (internal quotation marks and citations omitted). See also 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1357, at 299 (1990) (court may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint"). The Department of Corrections report of Plaintiff's revocation hearing, (Ex. 5 to Affidavit of Craig Oseland, [Docket No. 74-3], 1-4); the audio recording of Plaintiff's (cont.)

Plaintiff was convicted in Minnesota state court of third-degree criminal sexual conduct and deprivation of parental rights and was sentenced to a term of imprisonment. See In re Commitment of Bandy, No. A 11–901, 2011 WL 5026399, at *1. Following his imprisonment, on April 29, 2010, Plaintiff was put on supervised release, and subsequently he was civilly committed to the Minnesota Sex Offender Program ("MSOP"), in Moose Lake, Minnesota in January of 2011. See Id. at 3. (See also Ex. 7 to Oseland Affidavit, [Docket No. 74-3]; First Amended Complaint, [Docket No. 47-1], 8)).

While detained at the MSOP and still on supervised release, Plaintiff was involved in a physical altercation with another detainee of the MSOP program. (Ex. 7 to Oseland Affidavit, [Docket No. 74-3], 7; First Amended Complaint, [Docket No. 47-1], 8). As a result of that altercation and a number of other minor and major rules violations, on August 21, 2012, a hearing was held to determine whether to revoke Plaintiff's supervised release. (Ex. 7 to Oseland Affidavit, [Docket No. 74-3], 6-7; First Amended Complaint, [Docket No. 47-1], 8). Defendant Oseland was the Department of Corrections hearing release unit officer who presided over the revocation hearing. (Id. at 7).

The Minnesota Department of Corrections maintains Policy 106.140 ("the Policy"), which applies to evidentiary hearings regarding whether to revoke a period of supervised release. (See, gen., Ex. 1 to Oseland Affidavit, [Docket No. 74-1]). Pursuant to the Policy, after receiving evidence at a revocation hearing, the hearing officer announces his decision regarding whether a violation of the conditions of supervised release occurred, and, at the end of the hearing,

_____

revocation hearing, (Ex. 4 to Oseland Affidavit, [Docket No. 74-2]); the Department of Corrections policy regarding evidentiary hearings, (Ex. 1 to Oseland Affidavit, [Docket No. 74-1], 1-18), Plaintiff's letters to Defendant Peterson attempting to challenge the decision to revoke his supervised release (Exs. 1, 2, to Affidavit of John Kuesel, [Docket No. 73-1], 2-3, 5-6), and Defendant Peterson's letters in response, (Exs. 1, 2 to Kuesel Affidavit, [Docket No. 73-1], 1, 4); Exs. 6 and 7 to Oseland Affidavit,  [Docket No. 74-3], 5-7), are all matters necessarily embraced by the pleadings or matters of public record that do not contradict the Amended Complaint.

announces the disposition of the alleged violation. (Id. at 5-6). The officer who presided over a hearing then prepares a written hearing report and provides copies of the report to the alleged offender and the representatives of the offender and the Department of Corrections. (Id. at 6). The Policy sets forth that an offender may appeal the decision of a hearing officer by sending a letter to the executive officer of the Department of Corrections hearing release unit within thirty (30) days of the offender's receipt of the decision. (Id. at 7). Pursuant to the Policy, the decision of the executive officer with regard to an appeal of the hearing officer's decision is final. (Id.).

After taking testimony at the hearing, Defendant Oseland orally announced his decision to revoke Plaintiff's supervised release and return Plaintiff to the Department of Corrections for a period of 210 days' incarceration. (Amended Complaint, [Docket No. 47-1], 3, 8; Ex. 4 to Oseland Affidavit, [Docket No. 74-2]). Plaintiff was present at all stages of the revocation hearing. (See, gen., Ex. 4 to Oseland Affidavit, [Docket No. 74-2).

Defendant Oseland, thereafter, prepared a written hearing report regarding the revocation hearing. (Ex. 5 to Oseland Affidavit, [Docket No.74-3], 1-2). The Decision Commentary section of Defendant Oseland's initial written hearing report erroneously contained the following statements that did not apply to Plaintiff: "At a previous Revocation Hearing conducted by this Hearing Officer in January of 2012 at The [sic] Saint Peter Regional Treatment Center. The offender was returned to The [sic] Department of Corrections for similar violations for extensive victim injury. Even though the offender at that time had been in treatment at MSOP St. Peter for over 10 years." (First Amended Complaint, [Docket No. 47-1], 8; Ex. 5 to Oseland Affidavit, [Docket No.74-3], 1-2). The remainder of the written hearing report did address Plaintiffs' supervised release revocation decision. (Ex. 5 to Oseland Affidavit, [Docket No. 74-3], 1-2).

Plaintiff was transferred to the Department of Corrections for a period of 210 days' incarceration, after which Plaintiff was returned to the MSOP. (See, gen., Ex. 4 to Oseland Affidavit, [Docket No. 74-2]) (indicating the Plaintiff would be returned to the MSOP after serving 210 days with the Department of Corrections following the revocation of his supervised release).

On September 24, 2012, Plaintiff received a copy of Defendant Oseland's written report regarding the August 21, 2012, revocation hearing. (See Ex. 1 to Kuesel Affidavit, [Docket No. 73-1], 2). On October 4, 2012, Plaintiff sent a letter to Defendant Peterson as the executive officer of the Department of Corrections hearing release unit, attempting to appeal Defendant Oseland's decision to revoke Plaintiff's supervised release. (Id.).

On October 17, 2012, Defendant Peterson sent Plaintiff a letter in which he informed Plaintiff of the Policy's requirement that letters seeking to appeal a hearing officer's decision must be sent within thirty (30) days of the offender receiving the pertinent decision. (Ex. 1 to Kuesel Affidavit, [Docket No. 73-1], 1). Defendant Peterson also told Plaintiff that, as Plaintiff's revocation hearing had been conducted on August 21, 2012, the thirty (30) day deadline for Plaintiff to have sent a letter appealing the decision or seeking an extension of time to file such a letter had expired on September 20, 2012. (Id.). Defendant Peterson also told Plaintiff that Plaintiff's request to appeal Defendant Oseland's decision was untimely and the Defendant Peterson's decision was final. (Id.).

On October 23, 2012, Plaintiff sent a letter to Defendant Peterson containing Plaintiff's Affidavit seeking reconsideration of Defendant Peterson's decision that Plaintiff's attempt to appeal Defendant Oseland's had been untimely. (See Ex. 2 to Kuesel Affidavit, [Docket No. 73-1] 4-5). Plaintiff asserted that he had received Defendant Oseland's decision on September 24,

2012, when he had received the copy of the written hearing report regarding the August 21, 2012, revocation hearing. (Id. at 5).

On December 19, 2012, Defendant Peterson sent Plaintiff a second letter in which he told Plaintiff that his position that he had only received Defendant Oseland's decision when he had received the written hearing report was incorrect and that an alleged offender first receives the hearing officer's decision when it is communicated to the alleged offender on the record at the revocation hearing. (Id. at 4). Defendant Peterson again told Plaintiff his decision that Plaintiff's attempt to appeal Defendant Oseland's decision had been untimely, and he told Plaintiff that he would receive no further correspondence regarding that decision. (Id.).

On March 29, 2013, Plaintiff sent to Defendant Peterson a letter in pertinent part asking that the incorrect information that Defendant Oseland had included in the written hearing report regarding the August 21, 2012, revocation hearing be removed from the report. (See Ex. 6 to Oseland Affidavit, [Docket No. 74-3], 3-4).

On April 8, 2013, Defendant Peterson sent Plaintiff letter informing Plaintiff that the incorrect information that had been included in the hearing report had in fact been removed. (Ex. 7 to Oseland Affidavit, [Docket No. 74-3], 5). Defendant Peterson's letter also included the following: "By copy of this letter to your Case Manager, you are to be given a Direct Order to submit no further correspondence on these particular matters. Failure to abide by this directive may result in disciplinary proceedings." (Id.).

On August 5, 2013, Plaintiff initiated the present action seeking monetary damages by filing a pro se Complaint, [Docket No. 1]. In his Complaint, Plaintiff appeared to allege that the DoC Defendants, along with various individual employees of the MSOP, had violated his civil rights with regard to the revocation hearing, Defendant Oseland's decision to revoke Plaintiff's

supervised release, and the denial of Plaintiff's subsequent attempts to appeal the revocation decision. (See, gen., Id.). Plaintiff alleged claims against the named Defendants of malicious prosecution, discrimination, false arrest/false imprisonment, obstruction of justice and access to courts, and misrepresentation. (Id. at 8-12, ¶¶ 46-65).

On September 23, 2013, the undersigned issued a Report and Recommendation, in which the undersigned concluded that Plaintiff's claims were barred by doctrine set forth in Heck v. Humphrey, 512 U.S. 477 (1994), as challenging in a federal civil rights action the legality of his confinement under state law. (Report and Recommendation, [Docket No. 3], 3-4). The undersigned also noted that Plaintiff had not at that time obtained a termination of the state law proceedings that had resulted in his favor, as required by the Heck doctrine in order for a plaintiff to seek money damages for an allegedly unconstitutional imprisonment; the undersigned recommended that all of Plaintiff's civil rights claims against the named Defendants be dismissed without prejudice. (Report and Recommendation, [Docket No. 3], 3-6).

On January 2, 2014, the Honorable John R. Tunheim, Chief United States District Court Judge of the District of Minnesota, issued an Order, [Docket No. 7], declining to adopt the September 23, 2013, Report and Recommendation, [Docket No. 3]. The District Court concluded that it was not yet entirely clear at least as of that stage of the proceedings that the revocation of Plaintiff's supervised release had not been favorably terminated and, in any event, that some of Plaintiff's claims might not necessarily challenge the legality of the revocation of Plaintiff's supervised release as they could be construed to allege challenges to the procedural aspects of the revocation and were not barred by the Heck doctrine. (January 2, 2014, Order, [Docket No.7], 6-8).

Plaintiff later voluntary dismissed his claims against all but the DoC Defendants. (See May 16, 2014, Order, [Docket No. 62], 1-2; September 29, 2014, Order, [Docket No. 69], 2, 8-10).

On April 1, 2014, Plaintiff moved the Court for leave to file an Amended Complaint. (Motion to Amend Complaint, [Docket No. 47]).  On July 7, 2014, the Court granted Plaintiff's motion in part, allowing him to file his proposed First Amended Complaint, [Docket No. 47-1], but denying the motion to the extent Plaintiff sought to include a section 1983 claim of abuse of power, which the undersigned concluded was futile. (See July 7, 2014, Order and Report and Recommendation, [Docket No. 63], 4-12). Plaintiff's proposed First Amended Complaint, [Docket No. 47-1], as modified by the July 7, 2014, Order, then became the presently operative complaint.

On May 15, 2015, the DoC Defendant filed the present Motion for Judgment on the Pleadings and for Summary Judgment. [Docket No. 71].

## II.   THE DOC DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND FOR SUMMARY JUDGMENT [Docket No. 71]

Defendant Commissioner of Corrections, Defendant Oseland, and Defendant Peterson now move the Court for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) and, in the alternative, for summary judgment under Rule 56 of all of Plaintiff's claims against them.

Before the Court addresses the merits of Defendant's motion, however, the Court must address a one sentence request at the end of Plaintiff's Memorandum in Opposition, [Docket No. 81], in which Plaintiff states that, should the Court find that he has failed to state a claim against the DoC Defendants, the Court should allow him leave to amend his complaint.

The Court is required to liberally construe the filings of *pro se* parties. See <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) ("A document filed *pro se* is to be liberally construed [.]") (internal citation and quotation marks omitted)). A *pro se* litigant, however, "is not excused from failing to comply with substantive and procedural law." <u>Burgs v. Sissel</u>, 745 F.2d 526, 528 (8th Cir. 1984).  In making his one sentence request to amend at the end of his Memorandum in Opposition, [Docket No. 81], Plaintiff has not filed a formal motion to amend his Amended Complaint, nor has Plaintiff filed any proposed factual or legal amendments to the proposed Amended Complaint. As such, even if the Court were to liberally construe Plaintiff's single sentence request in his opposition memorandum as a formal motion seeking leave to file a second Amended Complaint, Plaintiff has failed to comply with the requirements of Local Rule 7.1(b).

Plaintiff's single sentence request similarly failed to comply with Local Rule 15.1(b), which requires that:

> [a]ny motion to amend a pleading must be accompanied by: (1) a copy of the proposed amended pleading, *and* (2) a version of the proposed amended pleading that shows− through redlining, underlining, strikeouts, or other similarly effective typographic methods− how the proposed amended pleading differs from the operative pleading.

Local Rule 15.1(b) (emphasis added).

For the reasons set forth above, by Order, the Court will **DENY** Plaintiff's request to amend his Amended Complaint. The Court now turns to the merits of the DoC Defendants' motion.

### A.     Standard of Review – Motion for Judgement on the Pleadings

In evaluating a motion for judgment on the pleadings, the Court must accept all facts pled by the nonmoving party as true and draw all reasonable inferences from the facts in favor of the

nonmoving party. Waldron v. Boeing Co., 388 F.3d 591, 593 (8th Cir. 2004). "A reasonable inference is one 'which may be drawn from the evidence without resort to speculation.'" Kinserlow v. CMI Corp, 217 F.3d 1021, 1026 (8th Cir. 2000) (quoting Fought v. Hayes Wheels Int'l, Inc., 101 F.3d 1275, 1277 (8th Cir. 1996)).

A Court will grant a motion for judgment on the pleadings only where the moving party has clearly established that "'there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law,' the same standard used to address a motion to dismiss for failure to state a claim under Rule 12(b)(6)[.]" Ashley Cty., Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009) (quoting Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990) (internal citation omitted)).

A well-pled complaint does not need to set forth "detailed factual allegations" that describe the evidence to be presented, but must include sufficient factual allegations to provide the grounds on which the claim rests. Gregory v. Dillard's, Inc., 565 F.3d 464, 473 (8th Cir.2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "Thus, to survive a motion for judgment on the pleadings, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" McIvor v. Credit Control Servs., Inc., 987 F. Supp. 2d 968, 970 (D. Minn. 2013) (quoting Braden v. Wal–Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009)) aff'd, 773 F.3d 909 (8th Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (citing Twombly, 550 U.S. at 555). "A district court, therefore, is not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint." Gregory, 565 F.3d at 473 (internal quotations omitted).

9

The Eighth Circuit has defined the scope of materials that a Court may review when ruling on a motion for judgment on the pleadings:

> When considering a motion for judgment on the pleadings (or a motion to dismiss under Fed.R.Civ.P. 12(b)(6)), the court generally must ignore materials outside the pleadings, but it may consider "some materials that are part of the public record or do not contradict the complaint," <u>Missouri ex rel. Nixon v. Coeur D'Alene Tribe</u>, 164 F.3d 1102, 1107 (8th Cir.), <u>cert. denied</u>, 527 U.S. 1039, 119 S.Ct. 2400, 144 L.Ed.2d 799 (1999), as well as materials that are "necessarily embraced by the pleadings." <u>Piper Jaffray Cos. v. National Union Fire Ins. Co.</u>, 967 F.Supp. 1148, 1152 (D.Minn.1997). <u>See also</u> 5A Charles A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure: Civil 2d</u> § 1357, at 299 (1990) (court may consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint").

<u>Porous Media Corp. v. Pall Corp.</u>, 186 F.3d 1077, 1079 (8th Cir. 1999).

### B.    Analysis

The Court addresses Plaintiff's claims against each of the Defendants in turn:

1. <u>Claims against Defendant DoC Commissioner</u>

Plaintiff does not state in the operative Amended Complaint that he is specifically addressing any of his claims directly against Defendant DoC Commissioner. In fact, Plaintiff's only allegations regarding Defendant DoC Commissioner are as follows:

> The Defendant Commissioner of Correction in his personal and official capacity's [sic] after being contacted and appraised of the situation did allow to be set in motion discrimination interfering with and obstructing justice and of abuse of authority, violation of access to court conspiracy and misrepresentation. By him being responsible for monitoring the policy procedure and actions of his employee's and by his employee's causing this action and injury to Mr. Joe H. Bandy III, and by him not intervening did make him equally guilty to this crime or aide and abiding.

(First Amended Complaint, [Docket No. 47-1], 7).

Plaintiff, in essence, alleges that Defendant DoC Commissioner took no personal action, but that he is instead vicariously liable under all of Plaintiff's claims as a supervisor of the employees of the Department of Corrections who Plaintiff alleges personally violated his civil

rights. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." Iqbal, 556 U.S. at 676. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id. Plaintiffs must plead facts sufficient to support a defendant's personal involvement in the alleged unconstitutional act. See Beck v. LaFleur, 257 F.3d 764, 766 (8th Cir. 2001) (allegations that defendants instituted policies that deprived plaintiff of property were insufficient where complaint did not identify the policies). Accordingly, the extent that Plaintiff alleges that Defendant DoC Commissioner is vicariously liable for the acts of Defendant Oseland and Defendant Peterson, Defendant DoC Commissioner is entitled to judgment as a matter of law on Plaintiff's claims.

Further, even if viewing the factual allegations in Plaintiff's Amended Complaint as attempting to assert a claim against Defendant DoC Commissioner of failure to supervise the relief granted to Defendant DoC Commissioner would be the same. The Eighth Circuit has explained that a supervisor:

> may be held individually liable under § 1983 ... if a failure to properly supervise and train the offending employee caused a deprivation of constitutional rights. The plaintiff must demonstrate that the supervisor was deliberately indifferent to or tacitly authorized the offending acts. This requires a showing that the supervisor had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation.

Wever v. Lincoln Cty., Nebraska, 388 F.3d 601, 606-07 (8th Cir. 2004) (quoting Andrews v. Fowler, 98 F.3d 1069, 1078 (8th Cir. 1996). Put another way, the subjective deliberate indifference standard requires that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference." <u>Kahle v. Leonard</u>, 477 F.3d 544, 550 (8th Cir. 2007) (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994)).

For the most part, Plaintiff's allegations against Defendant DoC Commissioner consist of conclusory statements unsupported by specific facts. <u>See</u> <u>Iqbal</u>, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Even accepting all of the allegations that are in Plaintiff's Amended Complaint as true, and drawing any possible reasonable inferences in Plaintiff's favor, the evidence which the Court may consider in ruling on the motion for judgment on the pleadings contains no facts on which the Court could reasonably infer that Defendant DoC Commissioner had notice that any training procedures and supervision related to the decision to revoke Plaintiff's supervised release were inadequate such that a substantial risk of serious harm, *i.e.*, a constitutional violation, existed. Nor does the evidence contain any facts on which the Court could reasonably infer that Defendant DoC Commissioner actually did draw an inference that any inadequacy in training and supervision was likely to result in a constitutional violation. Accordingly, even when accepted as true and with all reasonable inferences drawn in Plaintiff's favor, the factual allegations in Plaintiff's Amended Complaint fail to support the essential elements of a failure to supervise claim and Defendant DoC Commissioner is entitled to judgment as a matter of law on the claim.

Based on the foregoing, the Court recommends **GRANTING** the Motion for Judgment on the Pleadings and for Summary Judgment, [Docket No. 71], on all of Plaintiff's claims against Defendant DoC Commissioner.

2.  Claims against Defendant Oseland

All of Plaintiff's claims against Defendant Oseland arise out of Defendant Oseland's mistaken inclusion of information in the written hearing report that did not pertain to Plaintiff. The Court concludes that Defendant Oseland has quasi-judicial absolute immunity for his challenged acts, which occurred in the scope of his duties as the hearing officer presiding over Plaintiff's revocation hearing.

It is well established that judges are protected by absolute immunity for their judicial actions. Pierson v. Ray, 386 U.S. 547, 553-554 (1967) ("Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction."). The Supreme Court has extended that immunity to other government officials who perform quasi-judicial functions for acts performed within the scope of their quasi-judicial duties. Cleavinger v. Saxner, 474 U.S. 193, 199 (1985) ("With this judicial immunity firmly established, the Court has extended absolute immunity to certain others who perform functions closely associated with the judicial process.")

The Supreme Court has said that whether an individual has quasi-judicial absolute immunity is not determined by the individual's rank, title, or "location within the Government," but by the nature of the individual official's responsibilities. Cleavinger, 474 U.S. at 201-02 (citing Butz v. Economou, 438 U.S. 478, 510 (1978)). Courts look to a number of factors to determine whether an individual government official is entitled to quasi-judicial absolute immunity, namely: "(a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political

influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal." Id. at 202 (citing Butz, 438 U.S. at 512).

Weighing evidence, making factual determinations, determining sanctions, and issuing written decisions are duties that are comparable in function to the duties of a judge. See Dunham v. Wadley, 195 F.3d 1007, 1011 (8th Cir. 1999) (affording absolute quasi-judicial immunity to veterinary examining board); see also Dixon v. Clem, 492 F.3d 665, 674 (6th Cir. 2007) (actions as a hearing officer of state administrative tribunal clearly taken in a judicial capacity). Indeed, the Eighth Circuit has held that a parole official, in deciding whether to grant, deny, or revoke supervised release, performs duties that are similar to a judge's duties and, as such, is entitled to quasi-judicial absolute immunity for those actions. See Anton v. Getty, 78 F.3d 393, 396 (8th Cir. 1996).

A Minnesota Department of Corrections hearing officer presiding over a revocation hearing is required to take testimony, consider and weigh evidence, make factual findings, determine appropriate sanctions, including whether to revoke the alleged offender's supervised release, and issue oral decisions that are subject to appeal.  (Ex. 1 to Oseland Affidavit, [Docket No. 74-1], 5-7). Those duties are closely analogous to the duties of the parole officer the Eighth Circuit concluded that quasi-judicial absolute immunity. See Anton, 78 F.3d at 396. Accordingly, the Court concludes that Defendant Oseland, as a Department of Corrections hearing officer is entitled to quasi-judicial absolute immunity for his actions within the scope of his duties as a hearing officer.

All of Plaintiff's allegations against Defendant Oseland concern Defendant Oseland's initial inclusion of incorrect factual information in the written hearing report. Defendant Oseland is required as part of his hearing officers duties to prepare the hearing report. (Ex. 1 to Oseland

Affidavit, [Docket No. 74-1], 6). Accordingly, the mistaken inclusion of the incorrect factual information occurred as part of Defendant Oseland's quasi-judicial duties and he is absolutely immune from suit as to those actions.[3] Because Defendant Oseland is entitled to quasi-judicial absolute immunity as to all of his challenged actions, Defendant Oseland is entitled to judgment as a matter of law as to all of Plaintiff's claims against him.

Based on the foregoing, the Court recommends **GRANTING** the Motion for Judgment on the Pleadings and for Summary Judgment, [Docket No. 71], on all of Plaintiff's claims against Defendant Oseland.

3. <u>Claims against Defendant Peterson</u>

a. *<u>Discrimination</u>*

Plaintiff alleges a "discrimination" claim against Defendant Peterson. The DoC Defendants assert that the <u>Heck</u> doctrine bars Plaintiff's claim, and also that Defendant Peterson is entitled to judgment as a matter of law as the allegations in Plaintiff's Amended Complaint fail support the essential elements of a claim of equal protection.

In support of his "discrimination" claim, Plaintiff only generally alleges:

[A]ll of the facts and allegations contained in paragraphs 1 through 50 of this complaint, and necessary to address said violations of discrimination defeating his access to the court to redress his grievances of his improper revocation interfering conspiring and obstructing justice and abuse of authority and the misuse of state equipment by misrepresentation of administrative rules and internal agency policies, and common law claims for negligence.

(Amended Complaint, [Docket No. 47-1], 10).   Similarly, Plaintiff alleges that Defendant Peterson "did support discrimination in refusing to review my appeal for the most frivolous of reasons.  And after me showing him the mistakes that was [sic] made in the disposition of my

---

[3] It is undisputed that the erroneous information accidentally included in the written report has in fact been removed as requested by Plaintiff. Moreover, there is no factual allegation as to how what was essentially a scrivener's error violated Plaintiff's constitutional rights or resulted in any injury to Plaintiff.

case and after his correcting these inconsistencies threatened me not to continue to correspond on these matters or I would be disciplined." (Id. at 11).

Although Plaintiff titles his claim as one of "discrimination," the Court construes the essence of the allegations of discrimination to be alleging a claim of denial of equal protection.[4] To prove an equal protection claim, Plaintiff must allege sufficient specific facts to indicate that he was treated differently by a government official than similarly situated persons and the differential treatment was not rationally related to a legitimate government objective. Koscielski v. City of Minneapolis, 435 F.3d 898, 901 (8th Cir. 2006) (citing City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439-40 (1985); Klinger v. Dep't of Corrections, 31 F.3d 727, 731 (8th Cir.1994); Bannum, Inc. v. City of St. Charles, 2 F.3d 267, 271 (8th Cir. 1993)). "To demonstrate this, [Plaintiff] must prove similarity to other individuals or entities receiving favorable treatment." Id. (citing Carter v. Arkansas, 392 F.3d 965, 968-69 (8th Cir. 2004); Klinger, 31 F.3d at 731).

The Court is not bound to accept as true the conclusory general allegations Plaintiff makes in support of his equal protection claim. See Iqbal, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). The limited factual allegations that Plaintiff does allege in his Amended Complaint regarding Defendant Peterson, even accepted as true, do not identify any similarly situated individuals whom Defendant Peterson treated differently. Even assuming solely for the sake of argument that Plaintiff had identified similarly situated individuals who had received differential treatment from Defendant Peterson, which Plaintiff has not, he has also alleged no facts whatsoever on which the Court could reasonably infer that any allegedly differential

---

[4] There are no allegations in Plaintiff's operative Amended Complaint which would support any construction of the pleading's content to be alleging some form of discrimination based on a protected class.

treatment by Defendant Peterson was not rationally related to a legitimate government objective. As such, even when accepted as true and with any reasonable inferences drawn in Plaintiff's favor, the allegations in Plaintiff's Amended Complaint do not support each of the essential elements of an equal protection claim, and Defendant Peterson is entitled to judgment as a matter of law on that claim.

Based on the foregoing, the Court recommends **GRANTING** the Motion for Judgment on the Pleadings and for Summary Judgment, [Docket No. 71], to the extent the motion pertains to Plaintiff's "discrimination" claim against Defendant Peterson.

### b. *False Arrest/False Imprisonment*

Plaintiff does not make <u>any</u> specific factual allegations in support of his false imprisonment[5] claim. Plaintiff does not even identify the Defendants at whom the claim is directed. The Court could find that Plaintiff failed to state a false imprisonment claim on that basis alone. <u>See</u> <u>Beck v. LaFleur</u>, 257 F.3d 764, 766 (8th Cir. 2001) (citing <u>Ellis v. Norris</u>, 179 F.3d 1078, 1079 (8th Cir.1999) (prisoner must allege a defendant's personal involvement or responsibility for constitutional violation to state a claim under 42 U.S.C. § 1983)). However, attempting to construe Plaintiff's pleadings liberally in his favor, the Court can view the pleadings as alleging that Defendant Peterson played a part in Plaintiff's supervised release being revoked by his actions in denying as untimely Plaintiff's attempt to appeal the revocation decision.[6]

---

[5] As Plaintiff makes no allegations that any of the Defendants in this case arrested him, and Plaintiff has challenged the decision to revoke his supervised release, only after which he was incarcerated, the Court construes the claim as one of false imprisonment.

[6] The record presently before the Court indicates that Defendant Peterson's challenged conduct in indicating to Plaintiff that he could be subject to discipline if he continued mailing Defendant Peterson about the revocation hearing report occurred in April 2013, <u>after</u> Plaintiff had already served the 210 days with the Department of Corrections and had been returned to the MSOP. Accordingly, that allegation cannot relate to the decision to revoke Plaintiff's supervised release.

Plaintiff's false imprisonment claim is barred by the doctrine of <u>Heck</u>. In <u>Heck</u>, the U.S. Supreme Court held that:

> [I]n order to recover damages for allegedly unconstitutional . . . imprisonment, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

512 U.S. at 487.

Under the <u>Heck</u> rule, a litigant's claim for damages related to a conviction or sentence that has <u>not</u> been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus" is <u>not</u> cognizable under § 1983. <u>Heck</u>, 512 U.S. at 486–87. Accordingly, to determine whether a prisoner's suit may proceed under § 1983, a "district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." <u>Id.</u> at 487. An action will only be allowed to proceed if the claims would <u>not</u> demonstrate the invalidity of a plaintiff's conviction or sentence should the plaintiff be allowed to proceed with his claims. <u>Id.</u>

A claim of false imprisonment necessarily implies the invalidity of the challenged imprisonment, which here resulted from the initial decision to revoke Plaintiff's period of supervised release and Defendant Peterson's denial of Plaintiff's appeal therefrom as untimely. The corrected written hearing report, which the Court may review in ruling on the motion for judgment on the pleadings, clearly demonstrates that the initial decision to revoke Plaintiff's supervised release was <u>not</u> terminated in his favor once the incorrect information was removed. (<u>See</u> Ex. 7 to Oseland Affidavit, [Docket No. 74-3], 6-7). Moreover, there is nothing factually

alleged in the present pleading to show that the action of Defendant Peterson on the Plaintiff's appeal from the initial revocation of supervised release decision was in any way independently violative of any civil rights of Plaintiff's. As such, Plaintiff's false imprisonment claim is clearly barred by the Heck doctrine, and Defendant Peterson is entitled to judgment as a matter of law as to that claim.

Because Plaintiff's false imprisonment claim is barred by the Heck doctrine, the Court recommends **GRANTING** the Motion for Judgment on the Pleadings and for Summary Judgment, [Docket No. 71], on Plaintiff's claim of false imprisonment against Defendant Peterson.

c. *Obstruction of Justice*

Although Plaintiff titles this claim "obstruction of justice," the Court construes Plaintiff's pleadings liberally in his favor as alleging a claim of a violation of the right of meaningful access to the courts because obstruction of justice is not a cognizable claim under 42 U.S.C. § 1983. The Eighth Circuit has discussed the parameters of a claim of denial of meaningful access to the courts:

> The Constitution guarantees prisoners a right to access the courts. See Murray v. Giarratano, 492 U.S. 1, 11 n. 6, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989) ("The prisoner's right of access has been described as a consequence of the right to due process of law and as an aspect of equal protection." (internal citations omitted)); see also Christopher v. Harbury, 536 U.S. 403, 415 n. 12, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002) (noting, outside of the context of prisons, the right to access the courts is guaranteed by an amalgam of the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses). For prisoners, meaningful access to the courts "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), overruled on other grounds by Lewis v. Casey, 518 U.S. 343, 354, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). In Bounds, the phrase "adequate assistance from persons trained in the law" refers to "the adequacy of

the prisoner's access to his or her court-appointed counsel or other law-trained assistant," not "to the effectiveness of the representation." Schrier v. Halford, 60 F.3d 1309, 1313–14 (8th Cir.1995). Prisoners do not have a constitutional right to legal counsel to pursue the prisoners' grievances; consequently, prisoners do not possess a constitutional right to effective assistance of counsel in pursuing advice from legal counsel regarding prison grievances. Id. at 1313. Meaningful access to the courts is the capability to bring "actions seeking new trials, release from confinement, or vindication of fundamental civil rights." Bounds, 430 U.S. at 827, 97 S.Ct. 1491; see Lamp v. State of Iowa, 122 F.3d 1100, 1105 (8th Cir.1997). The state has no obligation to "enable the prisoners to *discover* grievances [or] to *litigate effectively* once in court." Casey, 518 U.S. at 354, 116 S.Ct. 2174.

To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim. See Harbury, 536 U.S. at 413, 415, 122 S.Ct. 2179; *Casey*, 518 U.S. at 351, 353, 355, 116 S.Ct. 2174.

White v. Kautzky, 494 F.3d 677, 679-80 (8th Cir. 2007).

Plaintiff alleges that Defendant Peterson

deprived Plaintiff of his rights privileges and immunities secured by the Constitution and law [sic] of the United State [sic], in violation of 42 C.S.C. [sic] § 1983, in committing acts in violation of the Fourteenth and First Amendment protections against government interference with access to courts and due process rights. Did arrest and prevent Plaintiff from ever being heard or considered in the problematic issues of being attacked by a client but made to be the attacker and false information was entered by the hearing officer on the record but when made aware of the situations was derelict in his duty's[sic].

(Amended Complaint, [Docket No. 47-1], 13).

Plaintiff's allegations in support his claim of violation of the right of meaningful access to courts are composed almost entirely of legal conclusions. See Iqbal, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). However, when the allegations are liberally construed and any reasonable inferences have been drawn, Plaintiff, in essence, alleges that Defendant

Peterson's refusal to excuse Plaintiff's untimely filing of his attempt to appeal the initial supervised release revocation decision somehow denies him access to the courts.

A review of the Department of Corrections evidentiary hearing Policy, (Ex. 1 to Oseland Affidavit, [Docket No. 74-1]), which the Court may consider in ruling on the judgment on the pleadings and which is not in dispute, indicates that the State of Minnesota Department of Corrections maintains a policy by which individuals who are suspected of having violated their supervised release are given a hearing and an opportunity to present evidence regarding the alleged violation, and beyond that, are given a time-limited opportunity to appeal an adverse decision that revokes their supervised release. The presented record indicates that the State of Minnesota _did_ provide Plaintiff with an opportunity to present his claims regarding the revocation of his supervised release, and that Defendant Peterson merely followed the Policy governing the provision of that opportunity as well as any appeal therefore. Accordingly, even when the factual allegations in Plaintiff's Amended Complaint are accepted as true and any reasonable inferences are adopted in Plaintiff's favor, this meaningful access to courts claim fails, and Defendant Peterson is entitled to judgment as a matter of law on that claim.

Based on the foregoing, the Court recommends **GRANTING** the Motion for Judgment on the Pleadings and for Summary Judgment, [Docket No. 71], on Plaintiff's claim of "obstruction of justice" against Defendant Peterson.

### d. _Misrepresentation_

In support of his "misrepresentation" claim against Defendant Peterson, Plaintiff only generally realleges by way of incorporation by reference "all facts and allegations contained in paragraphs 1 through 64 of this complaint, and necessary to address said violations of insubordinate defiance of authority, refusal to comply with proper policies and procedures and

wonton disregard of directives and policies." (First Amended Complaint, [Docket No. 47-1], 13). With regard to Defendant Peterson, Plaintiff accordingly makes the exact same allegations on his misrepresentation claim that he made in support of his obstruction of justice claim.

Although Plaintiff titles this claim "misrepresentation," the factual allegations Plaintiff makes appear to show that he is in fact attempting to allege that Defendant Peterson failed to follow Department of Corrections' internal policies when refusing to excuse the untimeliness of Plaintiff's attempts to appeal the initial decision on the revocation of his supervised release. Even when Plaintiff's factual allegations are accepted as true and any reasonable inferences are adopted in his favor, the evidence that the Court may consider when ruling on a motion for a judgment on the pleadings indicates that Defendant Peterson actually abided by DoC policies when refusing to excuse the untimeliness of Plaintiff's attempts to appeal the revocation determination. More importantly, however, even assuming solely for the sake of argument that Plaintiff had alleged facts indicating that Defendant Peterson had not followed DoC policies, an official's alleged violation of an internal policy of the Department of Corrections does <u>not</u> rise to the level of a § 1983 claim. <u>See</u> <u>Kennedy v. Blankenship</u>, 100 F.3d 640, 643 (8th Cir. 1996) (no federal constitutional liberty interest in having state officers follow state law); <u>see</u> <u>also</u> <u>Smith v. Rucker</u>, 259 F.3d 933 (8th Cir. 2001) (per curiam) (inmate's allegation that prison officials violated his due process rights by failing to follow administrative regulations did not state a claim; the due process clause does not federalize state-law procedural requirements). Accordingly, Defendant Peterson is entitled to judgment as a matter of law on Plaintiff's "misrepresentation" claim.

Based on the foregoing, the Court recommends **GRANTING** the Motion for Judgment on the Pleadings and for Summary Judgment, [Docket No. 71], on Plaintiff's claim of "misrepresentation" against Defendant Peterson.

e. _Access to Courts_

In support of Plaintiff's claim that Defendant Peterson violated his right of meaningful access to the courts, Plaintiff again makes the exact same allegations against Defendant Peterson that he did in support of his claim of "obstruction of justice."  The Court's recommendation that the motion for judgment on the pleadings be granted with respect to the "obstruction of justice" claim requires the same recommendation be made with regard to Plaintiff's claim of denial of the right of meaningful access to the courts. Accordingly, the Court recommends **GRANTING** the Motion for Judgment on the Pleadings and for Summary Judgment, [Docket No. 71], on Plaintiff's claim of denial of the right of meaningful access to courts against Defendant Peterson.

f. _Due Process_

In support of his due process claim, Plaintiff alleges that Defendant Peterson,

while having the power and control to correct errors that took place and to allow plaintiff to avoid his liberty to be removed from him, abused his authority by repeatedly refusing to accept his appeal in this matter. Consequently, plaintiff did 210 day [sic] hard prison time. Defendant Jeff Peterson once Plaintiff filed a correction of data and information request, did correct the false information that played a major part in his being put in prison.

(Amended Complaint, [Docket No. 47-1], 15-16).

Plaintiff does not identify whether he is alleging a substantive due process or a procedural due process claim. Accordingly the Court will address the sufficiency of Plaintiff's allegations under each possibility.

i.   Procedural Due Process

"To establish a procedural due process violation, [a plaintiff] must prove that he was deprived of 'an opportunity . . . granted at a meaningful time and in a meaningful manner for [a] hearing appropriate to the nature of the case." Boddie v. Connecticut, 401 U.S. 371, 378 (1971) (citations and quotations omitted).

There is no dispute that Defendant Peterson denied Plaintiff's untimely attempts to appeal the decision to revoke Plaintiff's supervised release. The Department of Corrections' Policy indicates that the Department of Corrections affords individuals who have been accused of violating the conditions of their supervised release a hearing regarding the alleged violation wherein they are allowed to submit evidence, be represented by counsel, and cross-examine witnesses. (Ex. 1 to Oseland Affidavit, [Docket No. 74-1], 5-6). The Policy distinguishes between a decision rendered and delivered at the close of the revocation hearing and a written hearing report created later.  (Id.). An individual who wishes to appeal the decision rendered at the hearing is allowed thirty days from the date that the decision was received.  (Id.) (emphasis added). In this case, it is undisputed that Plaintiff was personally present at the hearing and he personally heard (i.e., received) the decision of the hearing officer when it was verbally rendered at the close of the hearing.

Accepting Plaintiff's factual allegations as true and adopting any reasonable inferences in Plaintiff's favor, the evidence that the Court may consider when ruling on the motion for judgment on the pleadings indicates that Plaintiff was in fact allowed an opportunity to be heard at his revocation hearing, and that Plaintiff also had the opportunity to file an appeal of the adverse decision for thirty days following the hearing; a period for filing an appeal which he missed. Accordingly, even when accepting the allegations in Plaintiff's Amended Complaint as

true, Plaintiff cannot demonstrate that he was denied procedural due process by Defendant Peterson, and Defendant Peterson is entitled to judgment as a matter of law as to any procedural due process claim.

ii. Substantive Due Process

"To establish a substantive due process violation, [a plaintiff] must demonstrate that a fundamental right was violated and that the conduct shocks the conscience." Akins v. Epperly, 588 F.3d 1178, 1183 (8th Cir. 2009). "'Only the most severe violations of individual rights that result from the brutal and inhumane abuse of official power rise to' the conscience-shocking level." Davis v. White, 794 F.3d 1008, 1015 (8th Cir. 2015) (quoting White v. Smith, 696 F.3d 740, 757–58 (8th Cir. 2012)). "A plaintiff must establish the government action complained of is truly irrational, that is something more than ... arbitrary, capricious, or in violation of state law." Mills v. City of Grand Forks, 614 F.3d 495, 498 (8th Cir. 2010) (citation and internal quotation marks omitted) (alteration in original). "Whether the alleged conduct shocks the conscience is a question of law." Akins, 588 F.3d at 1183 (citing Terrell v. Larson, 396 F.3d 975, 981 (8th Cir. 2005) (en banc)).

Accepting the allegations in Plaintiff's Amended Complaint as true and adopting any reasonable inferences in Plaintiff's favor, the evidence that the Court may consider when ruling on a motion for judgment on the pleadings is clear that Defendant Peterson followed DoC Policy regarding the timeliness of appeals when he determined Plaintiff's appeal was untimely. As Defendant Peterson merely followed DoC policy, his actions in denying as untimely Plaintiff's attempts to appeal the initial revocation of supervised release decision cannot be said to have been arbitrary, capricious, or even in violation of state law, much less shocking to the conscience.  Accordingly, to the extent Plaintiff's allegations may be construed as alleging a

substantive due process claim, Defendant Peterson is entitled to judgment as a matter of law on that claim.

Because, Plaintiff Amended Complaint fails to state either a procedural or a substantive due process claim against Defendant Peterson the Court recommends **GRANTING** the Motion for Judgment on the Pleadings and for Summary Judgment, [Docket No. 71], on Plaintiff's due process claim against Defendant Peterson.

IV.    **CONCLUSION**

A.  Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Plaintiff's informal request to amend his Amended Complaint is **DENIED**.

B.  Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.  The Defendant Commissioner of Corrections, Defendant Craig Oseland, and Defendant Jeff Peterson's Motion for Judgment on the Pleadings and for Summary Judgment, [Docket No. 71], be **GRANTED**; and,

2.  That Plaintiff's claims against Defendant Commissioner of Corrections, Defendant Oseland, and Defendant Peterson be **DISMISSED with prejudice**.

Dated: January 29, 2016                              s/Leo I. Brisbois
                                                     The Honorable Leo I. Brisbois
                                                     United States Magistrate Judge

**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]"  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.