# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

JOE H. BANDY, III,

                                        Civil No. 13-2209 (JRT/LIB)

                    Plaintiff,

                                        **MEMORANDUM OPINION**
v.                                      **AND ORDER**

COMMISSIONER OF CORRECTION,
JEFF PETERSON, and
CRAIG OSELAND,

                    Defendants.

---

Joe H. Bandy, III, 1111 Highway 73, Moose Lake, MN 55767, *pro se*.

Margaret E. Jacot, Assistant Attorney General, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 900, St. Paul, MN 55101, for defendants Commissioner of Correction, Jeff Peterson, and Craig Oseland.

Plaintiff Joe H. Bandy, III, is serving a period of supervised release while civilly committed to the Minnesota Sex Offender Program ("MSOP"). Bandy brings this action against the Commissioner of the Department of Corrections ("DOC") and two DOC employees, Jeff Peterson and Craig Oseland. He alleges various civil rights claims based on the revocation of a period of his supervised release following an altercation with another MSOP detainee. Defendants moved for judgment on the pleadings, and the Magistrate Judge recommended that the Court dismiss Bandy's claims. The Magistrate Judge also denied Bandy's request to amend his complaint. Bandy now objects to the Magistrate Judge's recommendation and order. Reviewing *de novo*, the Court will

overrule Bandy's objections, affirm and adopt the Magistrate Judge's order and recommendations, and grant Defendants' motion for judgment on the pleadings.

## BACKGROUND

## I.   FACTUAL BACKGROUND[1]

Bandy served a term of imprisonment following his conviction for "third-degree criminal sexual conduct and deprivation of parental rights." *In re Commitment of Bandy*, No. A11-901, 2011 WL 5026399, at *1 (Minn. Ct. App. Oct. 24, 2011). Bandy was placed on supervised release on April 29, 2010, and civilly committed to MSOP on January 18, 2011. (Aff. of Craig Oseland ("Oseland Aff."), Ex. 3 at 22, 24, May 15, 2015, Docket No. 74.)[2] While in MSOP and on supervised release, Bandy had a physical altercation with another detainee. (Oseland Aff, Ex. 7.) On August 21, 2012, DOC held a hearing to determine whether to revoke Bandy's supervised release based on the incident. (*Id.*)

DOC Policy 106.140 ("the Policy") provides "standardized procedures for evidentiary hearings, including release revocation and inmate disciplinary hearings"

---

[1] In deciding a motion for judgment on the pleadings, "the court generally must ignore materials outside the pleadings, but it may consider 'some materials that are part of the public record or do not contradict the complaint,' as well as materials that are 'necessarily embraced by the pleadings.'" *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citations omitted). The "court may consider 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.'" *Id.* (quoting 5A Charles A. Wright & Arthur Miller, *Federal Practice and Procedure Civil 2d* § 1357, at 299 (1990)). Thus, in addition to the complaint, the Court will also consider the written report of Bandy's hearing, the recording of his hearing, DOC policy regarding revocation hearings, and written correspondence between Bandy and Defendant Peterson regarding Bandy's attempts to appeal. All of these documents are necessarily embraced by the pleadings or matters of public record.

[2] All citations to the record use CM/ECF pagination.

before the hearings and release unit ("HRU"), a department within the DOC.  (Oseland Aff., Ex. 1 at 1.)   The hearing is adversarial, and a DOC representative or "agent" brings and attempts to prove the violation.  (*Id.* at 5-6.)  Under the Policy, an offender may be represented by counsel, including a public defender if he or she cannot retain an attorney; cross-examine witnesses; and provide his or her version of events.  (*Id.* at 1, 5-6.)  Based on the evidence presented at the hearing, the hearing officer decides whether the offender violated his or her conditions of release by a preponderance of the evidence.  (*Id.* at 2, 6.) The hearing officer typically announces the decision, the facts supporting the decision, and the disposition at the hearing.  (*Id.* at 6.)  At some point after the hearing, the hearing officer also provides the offender with a written hearing report.  (*Id.*)  The offender may appeal to the executive officer of the HRU within thirty days of the receipt of the decision.  (*Id.* at 7.)  The executive officer's decision to affirm, amend, or reverse is final. (*Id.*)

Defendant Oseland acted as the "Hearing and Release Officer" at Bandy's hearing. (*Id.*, Ex. 7 at 7.)  Bandy was accused of "[f]ail[ing] to refrain from assaultive, abusive or violent behavior or threats of violence."  (*Id.* at 6.)  Bandy and his counsel argued that he injured the other detainee in self-defense, and provided evidence of "an extensive history of abusive, physical, and harassing behavior against [Bandy] by the victim of the assault, and his friends."  (*Id.* at 7.)  Oseland found that Bandy violated his conditions of supervised release, in part because he admitted that he did "inflict bodily harm on the victim."  (*Id.*)  The DOC representative requested a term of 365 days, and Bandy's attorney requested that Bandy's release be restructured rather than revoked because he

was acting in self-defense.  (*Id.*)  At the hearing, Oseland revoked Bandy's supervised release and directed him to serve 210 days in a DOC facility.  (*Id.*, at 2.)

Bandy received Oseland's written report on September 24, 2012, and attempted to appeal by letter on October 4, 2012.  (Aff. of John Kuesel ("Kuesel Aff."), Ex. 1 at 2-3, May 15, 2015, Docket No. 73.)  On October 17, 2012, Defendant Peterson, the executive officer of the HRU, rejected Bandy's appeal as untimely because the Policy required him to appeal or request an extension of time to appeal within thirty days after he was presented with the hearing officer's decision, which in this case occurred at the hearing. (*Id.* at 1.)  On October 23, 2012, Bandy sought reconsideration, and argued that he could appeal thirty days from the date that he received the hearing report, not the oral decision. (*Id.*, Ex. 2 at 5.)  Peterson responded on December 19, 2012, again stating that Bandy's appeal was untimely because a hearing decision is "received" when the hearing officer makes the decision on the record with the offender present, not when the offender receives the written summary of the hearing.  (*Id.* at 4.)

On March 29, 2013, Bandy sent another letter requesting that Peterson correct three portions of the hearing summary.  (Oseland Aff., Ex. 6.)  First, Bandy requested that "stalking behavior" be removed from the hearing summary's aggravating factors. (*Id.* at 3.)  Second, Bandy requested that Peterson remove the following statement from commentary section:

> At a previous Revocation Hearing conducted by this Hearing Officer in January of 2012 at The St. Peter Regional Treatment Center.  The offender was returned to The Department of Corrections for similar violations for extensive victim injury.  Even though the offender at that time had been in treatment at MSOP St. Peter for over 10-years.

(Oseland Aff., Ex. 5 at 1; *id.*, Ex. 6 at 3-4.)   It appears that this statement was inadvertently added to the report and likely pertained to another offender.   Third, Bandy requested that Peterson remove the statement that the victim's injuries "result[ed] in a hospital placement," because the victim only received stitches, and did not stay in a hospital.   (*Id.*, Ex. 6 at 4.)   Peterson granted Bandy's second and third requests, but denied the first because the phrase "stalking behavior" was "standard . . . language used concerning a certain aggravating factor."   (*Id.*, Ex. 7 at 5.)   Finally, Peterson ordered Bandy not to submit "further correspondence on these particular matters."   (*Id.*)

## II.    PROCEDURAL BACKGROUND

On August 5, 2013, Bandy brought the present action *pro se* against various DOC and MSOP employees, alleging civil rights claims based on the revocation of his supervised release.   On September 23, 2013, the Magistrate Judge issued an R&R recommending that the Court dismiss Bandy's action as barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).   (R&R, Sept. 23, 2013, Docket No. 3.)   Under *Heck*, a prisoner-plaintiff cannot maintain a claim for damages that "would render a conviction or sentence invalid," unless the conviction or sentence has been invalidated.   *Heck*, 512 U.S. at 486-87.   The Court declined to adopt the R&R, finding that at the early stage of proceedings, it was unclear whether the revocation had been favorably terminated and that Bandy may have been challenging various procedural aspects of the revocation, not necessarily barred by *Heck*.   (Order, Jan. 2, 2014, Docket No. 7.)

Bandy has voluntarily dismissed claims against all defendants except those discussed in this Order.  (*See* Order, May 16, 2014, Docket No. 62; Order, Sept. 29, 2014, Docket No. 69.)  The Magistrate Judge granted Bandy's prior motion to amend his complaint, except for his request to add a § 1983 claim for abuse of power.  (Order, July 7, 2014, Docket No. 63.)  Thus, the operative complaint is Bandy's First Amended Complaint, filed on April 1, 2014.  (First Am. Compl., Attach. 1 ("Compl."), Apr. 1, 2014, Docket No. 47.)

Defendants filed the present motion for judgment on the pleadings and for summary judgment on May 15, 2015.  On January 29, 2016, United States Magistrate Judge Leo I. Brisbois issued an R&R recommending that the Court grant judgment on the pleadings in favor of Defendants.  (Order and R&R ("R&R"), Jan. 29, 2016, Docket No. 86.)  The Magistrate Judge recommended dismissing the claims against the DOC Commissioner because Bandy failed to allege that the DOC Commissioner had any involvement in the alleged constitutional violations and also because he failed to allege facts sufficient to state a failure-to-supervise or train claim.  (*Id.* at 10-12.)  The Magistrate Judge also recommended dismissing Bandy's claims against Defendant Oseland because Oseland was entitled to absolute quasi-judicial immunity for his actions as a hearing officer.  (*Id.* at 13-15.)  Finally, the Magistrate Judge recommended dismissing all claims against Defendant Peterson because Bandy failed to state a plausible claim to relief.  (*Id.* at 15-26.)  The Magistrate Judge further denied Bandy's request to amend his complaint.  (*Id.* at 7-8.)  On February 16, 2016, Bandy objected to

the Magistrate Judge's recommendations.  (Pl.'s Objs. ("Objs."), Feb. 16, 2016, Docket

No. 88.)  The Court will now consider his objections.

## ANALYSIS

## I.    STANDARD OF REVIEW

Upon the filing of a report and recommendation by a magistrate judge, a party

may "serve and file specific written objections to the proposed findings and

recommendations."   Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b)(1).   "The

district judge must determine de novo any part of the magistrate judge's disposition that

has been properly objected to."  Fed. R. Civ. P. 72(b)(3).   "The objections should specify

the portions of the magistrate judge's report and recommendation to which objections are

made and provide a basis for those objections."   *Mayer v. Walvatne*, No. 07-1958, 2008

WL 4527774, at *2 (D. Minn. Sept. 28, 2008).   Objections which are not specific but

merely repeat arguments presented to and considered by a magistrate judge are not

entitled to *de novo* review, but rather are reviewed for clear error.   *See, e.g.*, *Martinez v.

Astrue*, No. 10-5863, 2011 WL 4974445, at *3 (E.D. Pa. Oct. 19, 2011) (citing cases

from numerous other jurisdictions); Fed. R. Civ. P. 72 advisory committee's note,

subd. (b) ("When no timely objection is filed, the court need only satisfy itself that there

is no clear error on the face of the record in order to accept the recommendation.").

Reviewing a motion for judgment on the pleadings pursuant to Rule 12(c) of the

Federal Rules of Civil Procedure, the Court applies the same standard as under a motion

to dismiss pursuant to Rule 12(b)(6).  *Clemons v. Crawford*, 585 F.3d 1119, 1124 (8th Cir.

2009).   Therefore, when considering a motion for judgment on the pleadings under Rule 12(c), the Court is required to "'accept as true all factual allegations set out in the complaint' and to 'construe the complaint in the light most favorable to the [plaintiff], drawing all inferences in [the plaintiff's] favor.'"  *Ashley Cty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (quoting *Wishnatsky v. Rovner*, 433 F.3d 608, 610 (8th Cir. 2006)).   Although a complaint need not contain "detailed factual allegations," it must contain sufficient factual allegations "to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## II.   DEFENDANT DOC COMMISSIONER

First, Bandy objects to the Magistrate Judge's conclusion that his claims against the DOC Commissioner should be dismissed because he failed to allege that the DOC Commissioner was personally involved in his revocation and because he failed to allege any facts to support a failure-to-supervise or failure-to-train claim.   Bandy does not dispute that the DOC Commissioner was not personally involved in his revocation; instead, he states that the Commissioner played a role because he was "in the chain of command" and "responsible for overseeing the [HRU]."  (Objs. at 7.)

Because the DOC Commissioner is a governmental official, he is not subject to vicarious liability for the actions of his employees.  *See Aschroft v. Iqbal*, 556 U.S. 662, 676 (2009).   Liability may still be available based on failure to train or failure to supervise the offending employee, but only if the Commissioner was "deliberately indifferent to or tacitly authorized the offending acts."  *Wever v. Lincoln Cty.*, 388 F.3d

601, 606 (8th Cir. 2004) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996)). To support such a claim, the plaintiff must plead facts suggesting that the supervisor "had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation." *Id.* (quoting *Andrews*, 98 F.3d at 1078).

Here, Bandy's complaint does not meet this standard. Bandy alleges that the Commissioner was "contacted and appraised of the situation" and "allow[ed] to be set in motion discrimination interfering with and obstructing justice and of abuse of authority, violation of access to court conspiracy and misrepresentation." (Compl. ¶ 36.) Bandy's vague suggestion that the Commissioner had knowledge of the situation is insufficient to suggest that he knew any "training procedures and supervision were inadequate and likely to result in a constitutional violation." *Wever*, 388 F.3d at 606. Bandy also alleges that the Commissioner was "responsible for monitoring" his employees and that he failed to intervene, "mak[ing] him equally guilty." (Compl. ¶ 36.) Bandy's objections only restate the fact that the DOC Commissioner was a supervisor or "in the chain of command." (Objs. at 7.) This fact alone is insufficient to state a claim for failure to train or failure to supervise. Finding no allegations of personal involvement in the alleged constitutional deprivations and insufficient allegations to support supervisory liability, the Court will overrule Bandy's objection, adopt the findings of the Magistrate Judge, and dismiss all claims against the DOC Commissioner.

## III.   DEFENDANT OSELAND

Next, Bandy objects to the Magistrate Judge's conclusion that Bandy's claims against Defendant Oseland are barred by quasi-judicial absolute immunity.   Absolute judicial immunity protects judges from claims based on "judicial act[s] taken within [the] court's jurisdiction."   *Cleavinger v. Saxner*, 474 U.S. 193, 199 (1985).   Absolute judicial immunity also extends "to certain others who perform functions closely associated with the judicial process" – this is generally referred to as quasi-judicial immunity.   *Id.* at 200. To determine whether quasi-judicial immunity applies, the Court does not focus on the individual's "rank or title or 'location within the Government.'"   *Id.* (quoting *Butz v. Economou*, 438 U.S. 478, 511 (1978)).   Instead, the Court considers whether factors "characteristic of the judicial process" are present, including:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

*Id.* at 202 (citing *Butz*, 438 U.S. at 512).

Bandy argues that the majority of federal circuit courts have applied qualified immunity to "parole board members and prison disciplinary committee members" instead of quasi-judicial immunity; however, he does not cite to any cases supporting his statement.   (Objs. at 2.)   In fact, the Eighth Circuit has found that parole board officials are protected by quasi-judicial absolute immunity when acting within their jurisdiction. *See Mayorga v. Missouri*, 442 F.3d 1128, 1131 (8th Cir. 2006) ("Parole board members

are entitled to absolute immunity when considering and deciding parole questions, as this function is comparable to that of judges."). The Eighth Circuit has not decided whether quasi-judicial immunity also extends to a prison hearing officer.

In *Cleavinger*, the Supreme Court found that members of a prison discipline committee were not protected by quasi-judicial immunity. 474 U.S. at 206. In that case, discipline committee members performed an adjudicatory function of determining whether an inmate committed a disciplinary violation; the committee heard testimony, received evidence, evaluated credibility and evidence, and rendered a decision. *Id.* at 203. However, the Court did not view "the discipline committee's function as a 'classic' adjudicatory one," in large part because the members were not "independent" or "professional hearing officers." *Id.* at 203. Instead, the committee members were prison officials – the particular committee at issue included an associate warden, a correctional supervisor, and the chief of case management – who were "temporarily diverted from their usual duties." *Id.* at 204. Additionally, the committee members in *Cleavinger* were "direct subordinates of the warden who review[ed] their decision," and they "work[ed] with the fellow employee who lodge[d] the charge against the inmate upon whom they s[at] in judgment." *Id.* The Court distinguished the discipline committee from a parole board, which it described as a "neutral and detached hearing body" and "an arm of the sentencing judge." *Id.* (internal quotation marks omitted). Finally, the Court also found that the disciplinary hearing lacked certain procedural safeguards: the prisoner was not represented by counsel, did not have a right to compel witnesses or to cross-examination, no right to discovery, and "[t]here was no cognizable burden of proof." *Id.* at 206.

Applying the *Butz* factors to the facts of this case, HRU hearing officers are more similar to administrative hearing officers or parole-board members than to the prison disciplinary committee in *Cleavinger*. With regard to the first factor – the need to ensure that an individual can perform his or her functions without harassment or intimidation – the HRU hearing officer's role in deciding whether or not to revoke supervised release is similar to that of a parole board deciding whether or not to revoke parole, and other courts have found a need to assure that parole board officers can perform their functions without harassment or intimidation. *See Motero v. Travis*, 171 F.3d 757, 760 (2[d] Cir. 1999) ("If parole board officials, like judges, were to fear adverse consequences from their parole decisions, they would experience great difficulty in rendering impartial decisions, a responsibility essential to the proper functioning of the penal system."); *Sellars v. Procunier*, 641 F.2d 1295, 1303 (9th Cir. 1981) (finding that parole board officers in deciding whether to grant, deny, or revoke parole faced the "risk of constant unfounded suits by those disappointed by the parole board's decisions" making their decisions more difficult and taking up time and resources).

With regard to the second, third, and fifth factors – the safeguards that reduce the need for private damages to control unconstitutional conduct, the insulation from political influence, and the adversary nature of the process – the hearing officers are again more similar to a parole board than the discipline committee in *Cleavinger*. The HRU and its hearing officers are more insulated from political pressure and more capable of being impartial because hearing officers work full-time for the HRU; the HRU is independent of the rest of the DOC; and if appealed, the executive officer of the HRU makes the final

decision on revocation rather than the warden.  *See* Minn. R. 2940.0300.  The HRU

hearing process also contains many of the procedural protections absent in *Cleavinger*: an

offender has the right to be represented by counsel and to cross-examine witnesses, and

violations must be supported by the preponderance of the evidence.  (*See* Oseland Aff.,

Ex. 1.)

There does not appear to be explicit reliance on precedent – the fourth factor in the

*Butz* test.  However, with regard to the sixth factor – the correctability of error on appeal

– an offender does have an opportunity to appeal to the executive officer of the HRU, and

under Minnesota law, the offender can challenge his or her sentence through a writ of

habeas corpus.  *See* Minn. Stat. ch. 589.

Considering all of the factors and the differences between this case and

*Cleavinger*, the Court finds that Oseland is protected by quasi-judicial absolute immunity

in his duties as a hearing officer in the HRU.  Because all of Bandy's claims against

Oseland stem from his adjudicatory functions as a hearing officer – writing the hearing

report and deciding to revoke Bandy's supervised release – the Court finds that Bandy's

claims against Oseland are barred by quasi-judicial absolute immunity.

In his objections, Bandy also argues that immunity does not apply because

Oseland "lost subject matter jurisdiction" when "the accuracy" of the hearing was

"compromised."   (Objs. at 2.)   He argues that the "hearing became a sham," and

therefore, judicial immunity does not apply.  (*Id.*)   However, these objections do not

change the conclusions reached above.  The accidental inclusion of incorrect information

in a portion of Bandy's hearing report does not make the hearing a "sham," and even if it were in some way improper, Oseland would still be protected by quasi-judicial immunity.

## IV.  DEFENDANT PETERSON

### A.  Procedural Due Process

Bandy objects to the Magistrate Judge's finding that his procedural due process claim failed because he was given a hearing that satisfied the procedural due process requirements.  To state a claim for procedural due process, the plaintiff "must show that he has a property or liberty interest that has been affected by the government action." *Royer ex rel. Estate of Royer v. City of Oak Grove*, 374 F.3d 685, 689 (8th Cir. 2004). Revocation of supervised release or parole implicates a protected liberty interest. *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).  The Supreme Court has held that the minimum requirements under the due process clause for a revocation hearing include: (1) written notice of the claimed violations, (2) disclosure of evidence against the offender, (3) the opportunity to be heard and present witnesses and evidence, (4) the ability to cross-examine witnesses, (5) a neutral and detached hearing body, and (6) a written statement describing "evidence relied on and reasons for" revocation.  *Id.* at 489.

The hearing procedure set out in the Policy includes all of these procedural requirements.   (*See* Oseland Aff., Ex. 1.)   Bandy received notice of the claimed violations.  (*Id.*, Ex. 3 at 26-27.)  At his hearing, he was represented by counsel and had the opportunity to present a defense and cross-examine witnesses.  (*Id.*, Ex. 5.)  A neutral

hearing officer presided over his hearing, and he received a written statement describing the reasons for his revocation.  (*Id.*)

Bandy does not appear to argue that his hearing lacked these protections; instead, he argues that Defendant Peterson violated his due process rights by denying his appeal as untimely.[3]   Bandy provides no support suggesting that he has a constitutionally protected right to an administrative appeal of a revocation decision, and the Court finds none.  *See Morrissey*, 408 U.S. at 489 (not including the right to appeal within the minimum requirements of due process for revocation hearings); *Weston v. Fabian*, No. A09-1105, 2010 WL 1541327, at *3 (Minn. Ct. App. Apr. 20, 2010) (finding no due-process right to an administrative appeal of a revocation decision and that "[t]he fact that the DOC's policies provide for such an appeal does not create a due-process entitlement to an appeal").  Bandy even acknowledges that administrative review of a disciplinary proceeding "is not constitutionally required," even though it may be "wise administrative policy."  (Objs. at 4.)  Additionally, in this case, Bandy did have an opportunity to appeal, he just missed the deadline.

To the extent that Bandy argues that Peterson failed to follow DOC policy by not allowing his appeal, he does not state a constitutional claim because mere failure to

_____

[3] Bandy also argues that the hearing officer relied on false evidence – the inaccurate information entered into his hearing report – to determine his term of revocation.  To support this contention, Bandy states that "[a]ccountability time starts with 30-60-90-120 day violations," but that he was given a term of 211 days.  (Objs. at 6.)  It is not entirely clear which claim this would fall under; however, the Court need not address it further because Bandy cites no authority or factual allegations suggesting the existence of such a policy and neither the inaccurate information nor a 30-60-90-120 rule was discussed during Bandy's hearing.  (Oseland Aff., Ex. 4.)

follow prison policy is not in and of itself a constitutional error.[4]  *Gardner v. Howard*,

109 F.3d 427, 430 (8th Cir. 1997); *see also Flick v. Alba*, 932 F.2d 728, 728 (D. Minn.

May 6, 1991) (finding that "regulations providing for an administrative remedy procedure

do not in and of themselves create a liberty interest in access to that procedure").

Relatedly, Bandy argues that the Policy[5] violates his procedural due process rights

based on the void-for-vagueness doctrine.   (Objs. at 3.)   Generally, "the void-for-

vagueness doctrine requires that a penal statute define the criminal offense with sufficient

definiteness that ordinary people can understand what conduct is prohibited and in a

manner that does not encourage arbitrary and discriminatory enforcement."  *Kolender v.

Lawson*, 461 U.S. 352, 357 (1983); s*ee also Williams v. Nix*, 1 F.3d 712, 716 (8th Cir.

1993) ("It is axiomatic that due process requires fair notice of prohibited conduct before a

sanction can be imposed").   The Court finds the doctrine inapplicable to the present

action, where the challenged language is not a criminal or civil enforcement provision

and no sanction was imposed based on Bandy's failure to comply with the Policy.   Thus,

because Bandy's hearing satisfied the procedural due process clause, the Court will

---

[4] Similarly, Bandy's claim entitled "misrepresentation" attempts to state a claim based on Peterson's alleged failure to follow internal policies by refusing to accept his appeal. The Magistrate Judge concluded that this claim failed because Peterson followed internal policy, and because even if he did not, failure to follow internal policies does not amount to a constitutional violation.   (R&R at 21-23.)  Bandy does not appear to object to the Magistrate Judge's recommendation on this claim, and because mere violation of an internal policy does not establish a constitutional violation, the Court finds no error in the Magistrate Judge's conclusion.

[5] In addition to the Policy itself, Bandy also appears to challenge the statutory authority that the Policy cites as vague or overbroad.  (Objs. at 7.)  The statutory sections cited by Bandy merely describe the DOC's authority to prescribe rules for the discipline of committed persons. *See, e.g.*, Minn. Stat. § 241.01, subd. 3a(b); *id.* § 242.10.  They do not contain the language that Bandy argues is vague or overbroad.

overrule Bandy's objections, adopt the findings of the Magistrate Judge, and dismiss Bandy's procedural due process claim.

### B.    Substantive Due Process

Bandy also objects to the Magistrate Judge's finding that he failed to state a claim for substantive due process.  To state a substantive due process claim, a plaintiff must plead facts suggesting "that a fundamental right was violated and that the conduct shocks the conscience." *Akins v. Epperly*, 588 F.3d 1178, 1183 (8th Cir. 2009).  "A plaintiff must establish 'the government action complained of is truly irrational, that is something more than . . . arbitrary, capricious, or in violation of state law." *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010) (alteration in original).  The Magistrate Judge found that Bandy failed to state a claim of substantive due process because Peterson's denial of his appeal followed the Policy, and therefore, was not "arbitrary, capricious, or even in violation of state law, much less shocking to the conscience."  (R&R at 25.)

Bandy makes only a general objection about a "possible Substantive Due Process" claim.  (Objs. at 6.)  The Court agrees with the Magistrate Judge's analysis.  The Court finds that Defendant Peterson's denial of Bandy's appeal as untimely was reasonable and does not shock the conscience as a matter of law.   The Court will therefore overrule Bandy's objection and dismiss his substantive due process claim.

### C.    Access to the Courts

Bandy objects to the Magistrate Judge's recommendation on his access-to-the-courts claim.  The Magistrate Judge found that this claim failed because pursuant to the

Policy, Bandy was given an opportunity to contest the violation and his revocation at the hearing, and that Peterson merely followed the Policy in denying his appeal as untimely. (R&R at 20-21.)  Various portions of the Constitution, including the due process clause and the First Amendment petition clause, "guarantee[] prisoners a right to access the courts."  *White v. Kautzky*, 494 F.3d 677, 679 (8th Cir. 2007) (citing *Murray v. Giarratano*, 492 U.S. 1, 11 n.6 (1989); *Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002)).  In furtherance of this right, prison authorities must "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  *Bounds v. Smith*, 430 U.S. 817, 828 (1977).  For these claims, a plaintiff must demonstrate an actual injury, as follows:

> To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim.

*White*, 494 F.3d at 680.  Here, Bandy has not suggested that Defendant Peterson's decision to deny his appeal as untimely resulted in the loss or hindrance of any legal claim, let alone a non-frivolous one.  Instead, Bandy was prevented from filing an internal appeal outside of the 30-day window.  Thus, Bandy was denied access not to the courts, but to an internal appeal – which was not constitutionally required, as discussed above – and thus, he lost only an internal appeal opportunity, not the ability to bring a non-frivolous legal claim.

Bandy's only specific objection about his right to access the courts appears to be that the Policy, and the statutory authority for the Policy, violated his right to access the courts because it was overbroad.  (Objs. at 3.)  As discussed above, however, Bandy's right to access the courts was not interfered with, and he did not lose the ability to present a legal claim.   Additionally, similar to the void-for-vagueness doctrine discussed previously, the overbreadth doctrine allows a facial challenge where "the threat of enforcement of an overbroad law may deter or 'chill' constitutionally protected speech." *Virginia v. Hicks*, 539 U.S. 113, 119 (2003).  The Court finds this doctrine inapplicable to the instant action.  Bandy essentially challenges Peterson's interpretation of the term "receipt of the decision"; even though the term could have two meanings, the ambiguity does not chill constitutionally protected speech.   Thus, Bandy's objection does not change the fact that he has failed to show that Peterson violated his right to access the courts, and the Court will overrule Bandy's objections and dismiss his claim based on his access to the courts.

### D.    Equal Protection

Bandy does not specifically object to the Magistrate Judge's determination of his "discrimination" claim under § 1983.   Because Bandy made no allegations of discrimination based on a protected class, the Magistrate Judge construed this claim as based on equal protection.  (R&R at 16 n.4.)  The Magistrate Judge found that Bandy did not allege facts suggesting that he was treated differently than any similarly situated person as required to state an equal protection claim. (*Id.* at 16-17.)   Bandy's only

statement related to this claim is, "if a statute or prison regulation provides for an appeal, the equal protection clause . . . requires that all those affected be treated alike." (Objs. at 4.) However, he states no facts – in his complaint or his objections – suggesting that others were treated differently. Because Bandy must plead facts suggesting "similarity to other individuals or entities receiving favorable treatment," his equal protection claim fails. *Koscielski v. City of Minneapolis*, 435 F.3d 898, 901 (8th Cir. 2006). Therefore, the Court will overrule his objections and dismiss his discrimination claim.

### E.      False Imprisonment

Bandy also does not appear to challenge the Magistrate Judge's conclusion that his false imprisonment claim is barred under the *Heck* doctrine. As noted above, *Heck* prohibits a prisoner-plaintiff from maintaining a claim for damages that "would render a conviction or sentence invalid," unless the conviction or sentence has been invalidated. 512 U.S. at 486-87. Bandy's claim of false imprisonment, if successful, would necessarily imply the invalidity of the revocation of his supervised release. The decision to revoke his supervised release has not been reversed, as shown by the corrected written hearing report. (Oseland Aff., Ex. 7.) Accordingly, the Court will dismiss Bandy's false imprisonment claim as barred by *Heck*.

### F.      Sixth Amendment

In his objections, Bandy also discusses the Sixth Amendment, which was not explicitly included in his complaint or the R&R. Bandy cites to Sixth Amendment cases, and states that his "opportunity to present a defense went out the window . . . due to . . .

false testimony and or the introduction of false evidence by the hearing officer." (Objs. at 2.) Bandy's arguments based on the Sixth Amendment fail because they were presented for the first time in his objections. "[A] claimant must present all his claims squarely to the magistrate judge, that is, the first adversarial forum, to preserve them for review." *Hammann v. 1-800 Ideas.com, Inc.*, 455 F. Supp. 2d 942, 948 (D. Minn. 2006) (quoting *Roberts v. Apfel*, 222 F.3d 466, 470 (8th Cir. 2000)); *see also Ridenour v. Boehringer Ingelheim Pharm.*, 679 F.3d 1062, 1067 (8th Cir. 2012) (finding that "[t]he district court properly refused to consider" plaintiff's argument "not presented first to the magistrate judge"). Additionally, even if the Court were to consider these arguments, "[t]he Sixth Amendment only applies to 'criminal prosecutions,' and a revocation of supervised release is not part of a criminal prosecution." *United States v. Ray*, 530 F.3d 666, 668 (8th Cir. 2008) (quoting *United States v. Martin*, 382 F.3d 840, 844 (8th Cir. 2004)). Bandy's challenges to the hearing procedures are instead subject to the "minimum requirements of due process," *Martin*, 382 F.3d at 844 (quoting *Morrissey*, 408 U.S. at 487-89), and as discussed above, Bandy's hearing met these requirements.

## V.     REQUEST TO AMEND

In the last sentence of his memorandum in opposition to defendants' motion for judgment on the pleadings and for summary judgment, Bandy requests that even if the Court found he failed to state a claim, the Court should grant leave to amend the complaint. (Pl.'s Mem. in Opp'n at 35, June 15, 2015, Docket No. 81.) The Magistrate Judge found that liberally construing Bandy's filing, he had moved the Court to amend

his complaint.  (R&R at 7-8.)  However, the Magistrate Judge denied Bandy's request because he failed to comply with the District of Minnesota Local Rules 7.1(b) and 15.1(b).  (*Id.* at 8.)

Because a motion for leave to amend the complaint is non-dispositive, the Court reviews the Magistrate Judge's order for clear error or errors of law.  *See* 28 U.S.C. § 636(b)(1)(A); D. Minn. LR 72.2(a).  To the extent that Bandy has objected to this portion of the Magistrate Judge's Order, the Court finds no error of law, and affirms the Magistrate Judge's opinion.  Bandy has not complied with the procedural requirements of Local Rule 7.1(b), which governs civil motions, and Local Rule 15.1(b), under which a plaintiff must include a copy of a proposed amended pleading and a version showing the changes when filing a motion to amend a complaint.  Bandy has also not suggested how he intends to amend his complaint, or how an amendment could save his complaint. Accordingly, the Court will affirm the Magistrate Judge's decision not to allow leave to amend.

## VI.    ADDITIONAL MOTIONS

In his objections, Bandy also requests that the Court appoint counsel because he is in a mental health unit, recently underwent surgery, and is having trouble accessing his property in MSOP.  (Objs. at 7-8.)  The Magistrate Judge already denied a prior request to appoint counsel, finding that the facts and legal issues in this case were not so complex to warrant appointment of counsel, that Bandy was "sufficiently able to articulate his claims," and that appointment was inappropriate at that stage in litigation when motions

had been fully briefed.  (Order, Apr. 2, 2014, Docket No. 52.)  The Court agrees with the Magistrate Judge's prior order.  In particular, due to the late stage of proceedings – this case has been pending since 2013 and the present motion has been fully briefed – the Court finds appointment of counsel to be inappropriate.  Thus, to the extent that Bandy has moved this Court to appoint counsel, the Court will deny his request.

Bandy has also filed a "Motion Under LR 60b.(d)(e)(f) for a New Hearing or for Void of Hearing."  (Pl.'s Mot., Feb. 16, 2016, Docket No. 87.)  It is not entirely clear from the motion what relief Bandy is seeking.  Under Federal Rule of Civil Procedure 60(b), a party may move to set aside a final judgment or order on the basis of mistake, newly discovered evidence, or fraud.  Fed. R. Civ. P. 60(b).  However, because the Magistrate Judge's R&R is not a final judgment or order, there is nothing to set aside. Thus, the Court will deny Bandy's motion.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     Bandy's Motion Under 60(b) [Docket No. 87] is **DENIED.**

2.     The Court **OVERRULES** Bandy's objections [Docket No. 88] and **AFFIRMS** and **ADOPTS** the Order and Report and Recommendation of the Magistrate Judge dated January 29, 2016 [Docket No. 86].

3.     Commissioner of Corrections, Oseland, and Peterson's Motion for Judgment on the Pleadings and for Summary Judgment [Docket No. 71] is **GRANTED**.

4.      Bandy's claims against the DOC Commissioner, Oseland, and Peterson are

**DISMISSED with prejudice**.


**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:   March 31, 2016                      s/ John R. Tunheim
at Minneapolis, Minnesota.                    JOHN R. TUNHEIM
                                                  Chief Judge
                                          United States District Court